**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

**UMA R. KANDAN,**                                    **Civil Action No. _____**

                                                                    **Jury Trial Demand**

                 **Plaintiff,**

**v.**

**CHARLOTTE A. BURROWS, CHAIR,
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION**

                 **Defendants.**


**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Uma R. Kandan ("Plaintiff"), by and through her attorneys, brings this action

against Defendants Charlottee Burrows ("Burrows"), in her official capacity, and the U.S. Equal

Employment Opportunity Commission ("EEOC") (collectively, "Defendants"), and respectfully

alleges as follows:

**INTRODUCTION**

1.        This is an action for declaratory, injunctive, and equitable relief, as well as

monetary damages, to redress Defendants' unlawful employment practices against Plaintiff.

Specifically, Defendant's failure to promote Plaintiff on the basis of her gender (female), race

(Asian), and national origin (Indian) in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

2.        Plaintiff, an Indian born female who became a naturalized U.S. Citizen, has

dedicated more than 24 years of service to the EEOC, working tirelessly to ensure the agency

meets its strategic priorities, which include preventing and investigating gender, race, and

ethnicity discrimination. She believes in the EEOC and its mission. However, she has experienced the very discrimination she sought to prevent from within the EEOC.

3.      During her 24 years of service to the EEOC, Plaintiff held various leadership positions, including Acting Field Director of the New Orleans Field Office. While holding the Acting Field Director position, Plaintiff was passed over for promotion to the full-time position of Field Director in favor of a substantially less qualified U.S born male subordinate.

4.      In stark contrast to Plaintiff's experience and qualifications, and the fact that Plaintiff was the then Acting Field Director, the selected candidate, Mr. Michael Kirkland, had less than two years of experience at the EEOC, did not meet the minimum qualifications for the position, and was Plaintiff's subordinate for a majority of his tenure at the EEOC before his promotion to Field Director. Despite these glaring disparities, the selecting official, Mr. Rayford O. Irvin (a U.S. born male), chose Mr. Kirkland, revealing his bias and discriminatory practices. To add insult to injury, Mr. Irvin admitted to the EEOC in his performance self-evaluation that he "**groomed and promoted**" Mr. Kirkland for this position including while Mr. Kirkland was Plaintiff's subordinate.

5.      Plaintiff's non-selection was not based on merit but on discriminatory factors, including her gender, race, and national origin. This lawsuit seeks to redress the unlawful employment practices perpetrated by the Defendants and to hold them accountable for the illegal discrimination faced by Plaintiff, who nevertheless remains committed to the mission and values of the EEOC.

## THE PARTIES

6.      Plaintiff Uma R. Kandan is an Indian born adult female who identifies as being of the Asian race, residing in New Orleans, Louisiana. At all relevant times, Plaintiff was employed

by Defendant EEOC in its New Orleans Field Office, where she currently works as an EEOC Enforcement Manager.

7.      Defendant EEOC is an agency of the United States government with its headquarters located at 131 M Street, N.E., Washington, D.C. The EEOC operates a field office in New Orleans, Louisiana.

8.      Defendant Burrows is the current Chair of Defendant EEOC and a proper defendant in this action pursuant to 42 U.S.C.A. § 2000e-16.

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in this district and Plaintiff worked in Defendant EEOC's field office located in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     Plaintiff, as required of all EEOC employees before initiating a civil suit, contacted the EEOC's Office of Civil Rights, Diversity and Inclusion (OCRDI) on March 17, 2023 and sought approval to file an internal EEO discrimination complaint against the EEOC.

12.     On April 17, 2023, the OCRDI approved Plaintiff's request and Plaintiff filed her internal EEO discrimination complaint on April 28, 2023.

13.     On July 18, 2024, Plaintiff filed a request to withdraw her EEO discrimination complaint from the EEOC's administrative process and to pursue her claims in federal court pursuant to 29 C.F.R. § 1614.407(b) because more than 180 days had passed since her formal EEO discrimination complaint was filed and no final decision had yet issued.

3

14.     On July 22, 2024, Administrative Judge Suzanne Dohrer granted Plaintiff's request and dismissed Plaintiff's Administrative Proceedings. A true and correct copy of the Administrative Judge's Order is attached as Exhibit A.

15.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

**I.     The EEOC's Relevant Administrative and Organizational Structure**

**a.  The EEOC's Organizational Structure**

16.     The EEOC is responsible for enforcing federal laws that make it illegal to discriminate against a job applicant or an employee because of the person's race, color, religion, sex (including pregnancy, childbirth, or related conditions, gender identity, and sexual orientation), national origin, age (40 or older), disability or genetic information.

17.     The EEOC is headquartered in Washington, D.C. and has 53 field offices throughout the United States that are overseen by 15 district offices.

18.     District offices have a District Director that is responsible for their office and any field office or local office in their district. Each field office has a Field Director who is responsible for their office and reports to the District Director in their District.

19.     The Houston District Office, located in Houston, Texas, covers the eastern portion of Texas and all of Louisiana. The Houston District Office oversees the New Orleans Field Office (the "NOFO").

20.     At all relevant times, the District Director for the Houston District Office has been Mr. Rayford O. Irvin ("Irvin"), a U.S. born African American male.

4

21.     Since on or about February 11, 2023,[1] the Field Director for the NOFO has been Mr. Michael Kirkland ("Kirkland"), a U.S. born African American male.

**b.  The EEOC's General Schedule Classification for Employees**

22.     Most civilian white-collar federal employees, including those at the EEOC, are paid according to the General Schedule ("GS") classification and pay system.

23.     The GS has 15 grades –GS-1 (lowest) to GS-15 (highest). Federal agencies establish (classify) the grade of each job based on the level of difficulty, responsibility, and qualifications required.

24.     An employee's GS level is also an important factor in qualifying the employee for future job vacancies within the EEOC. Most positions require a set amount of time in a GS level, *e.g.*, twelve months as GS-13, before being considered eligible to apply for a position with a higher GS level grade (GS-14).

**c.  The EEOC's Relevant Job Announcement and Promotion System**

25.     The EEOC follows a structured process for filling job vacancies. First, job vacancies, including for field directors, are posted internally and externally, detailing the position's qualifications, duties, and application procedures. Interested candidates must submit their applications through the designated platform by the specified deadline.

26.     Once the application period closes, submitted applications are reviewed to verify applicants meet the minimum qualifications and eligibility criteria. Eligible applicants are then put on a list called the Certificate of Eligibles and shortlisted based on their qualifications and experience.  The Certificate of Eligibles is then provided to the selecting official.

---

[1] Mr. Kirkland was selected for the position of Field Director of NOFO on or about February 7, 2023 but did not officially move into the role until February 11, 2023.

27.     Certain applicants with a disability, such as disabled U.S. Veterans, can apply "non-competitively" through a program called Schedule A. Schedule A permits these individuals to be considered for jobs for which they were not found to be qualified enough to be placed on a Certificate of Eligibles. However, even if they are permitted to apply, in order to be selected they must still be (1) qualified for the position; and (2) the best candidate for the position. Schedule A applicants are not guaranteed a selection for any position.

28.     Candidates listed on the Certificate of Eligibles and Schedule A candidates are invited to participate in a panel interview. The panel typically comprises multiple EEOC employees. During the interview, candidates are assessed on their skills, experience, and suitability for the position through a series of standardized questions and, sometimes, practical assessments.  The panel only evaluates a candidate based on a single interview.

29.     The panel has no authority to make the hiring decision.  Following the panel interview, the panel's evaluations and recommendations are provided to the selecting official for review. The final hiring decision is made by the selecting official after considering the candidates' relevant experience, performance, qualifications, and the panel's input.

30.     The selecting official also has the authority to convene a second interview of the candidates and to participate in said interview.

31.     Mr. Irvin served as the selecting official who hired Mr. Kirkland for the NOFO Field Director position on February 7, 2023.

### d.  The EEOC's Relevant Performance Rating System

32.     The EEOC evaluates its employees' performance using a structured rating system based on the federal government's fiscal year ("FY"), which runs from October 1st to September

30th. The performance evaluation system is designed to assess employees' effectiveness, efficiency, and overall contribution to the agency's mission.

33.     The rating options include "Outstanding," "Highly Effective," "Fully Successful," and "Unacceptable." "Outstanding" is the highest rating, indicating exceptional performance far exceeding expectations. "Highly Effective" denotes performance that surpasses job requirements consistently. "Fully Successful" represents satisfactory performance that meets job standards. "Unacceptable" signifies performance that fails to meet basic job requirements.

34.     Performance evaluations are conducted annually and are based on specific goals and objectives set at the beginning of the fiscal year. Employees are assessed on various criteria, including job knowledge, quality of work, productivity, teamwork, and adherence to EEOC policies and procedures.

35.     The evaluation process involves self-assessment, supervisor assessment, and sometimes peer reviews, to ensure a comprehensive review of an employee's performance. These ratings influence decisions regarding promotions, awards, and professional development opportunities within the agency.

36.     The evaluated employee is rated by a Rating Official and a Reviewing Official. The Rating Official provides a detailed summary of the evaluated employee's performance over the FY and provides the overall rating. The Reviewing Official will approve the performance evaluation and rating if they agree; but, if they do not agree with the rating, they have the option of changing the rating, *e.g.*, lowering an Outstanding rating to a lower rating of Highly Effective.

37.     Mr. Irvin was Plaintiff's Reviewing Official for multiple FY performance evaluations, including for FY22 when she was rated Outstanding.

II.     **Plaintiff's Exemplary Employment at the EEOC**

      a.  **Employment History**

38.      Plaintiff began her employment with the EEOC in 1999 in the NOFO and has served in various roles, including EEOC Investigator, EEOC Enforcement Supervisor, EEOC Enforcement Manager, and Acting Field Director.

39.      Plaintiff served as an EEOC Investigator for five years from August 1999 to December 2004 and in this role was responsible for conducting thorough investigations of discrimination complaints, analyzing complex case information, interviewing witnesses, preparing detailed investigative reports, and making recommendations based on findings.

40.      During Plaintiff's time as an EEOC Investigator, she started as a GS-7 classification and through progressive promotions reached the GS-12 classification.

41.      Plaintiff received performance ratings of mostly Outstanding while in the role of EEOC Investigator for the NOFO.

42.      Plaintiff served as an EEOC Enforcement Supervisor for ten years from December 2004 to April 2014 and in this role was responsible for overseeing and leading a team of investigators, ensuring compliance with federal regulations, developing enforcement strategies, managing high-profile discrimination cases, providing training and guidance to staff, and making critical decisions on case resolutions.

43.      During Plaintiff's time as an EEOC Enforcement Supervisor, she held the GS classification of GS-13 for 10 years.

44.      Plaintiff received performance ratings of Outstanding while in the role of Enforcement Supervisor for the NOFO.

45.     Plaintiff has served as an EEOC Enforcement Manager for 10 years in the NOFO from April 2014 to present and in this role has been responsible for managing the enforcement operations, supervising multiple teams of investigators and supervisors, developing and implementing enforcement policies, coordinating with other agencies, overseeing complex and high-stakes discrimination cases, and ensuring adherence to federal laws and regulations.

46.     During Plaintiff's time as an EEOC Enforcement Manager, she has held the GS classification of GS-14 for 10 years.

47.     Plaintiff has received performance ratings of mostly Outstanding while in the role of Enforcement Manager for the NOFO.

48.     Plaintiff also served as the Acting Field Director for the NOFO from August to December 2015 and in this role was responsible for leading the office's overall operations, managing resources, setting strategic priorities, overseeing enforcement and litigation activities, representing the office in meetings and negotiations, and ensuring compliance with EEOC policies and federal regulations. These responsibilities required a high degree of responsibility and independence.

49.     During Plaintiff's time as the Acting Field Director for the NOFO, she retained the GS classification of GS-14.

50.     Plaintiff received performance ratings of Outstanding while in the role of Acting Field Director for the NOFO.

     **a.  Plaintiff's Second Successful Tenure as Acting Field Director of The New Orleans Field Office**

51.     In or around March 2021, Malcolm S. Medley became the Field Director of the NOFO.  Plaintiff then reported directly to Mr. Medley.

52.     Sometime after assuming the position, Mr. Medley became unable to be present at the New Orleans Field Office.  As early as January 2022, he began relying on Plaintiff to fulfill many, and at times all, of his duties as the Field Director of NOFO.

53.     Given Mr. Medley's situation and Plaintiff's successful role in fulfilling his duties as needed, Mr. Irvin formally appointed Plaintiff to serve as the Acting Field Director of NOFO for a second time on August 15, 2022.

54.     During this time Plaintiff officially oversaw the entire NOFO, which included acting as Mr. Kirkland's direct supervisor through October 2022 when Mr. Kirkland transferred to the EEOC office in Raleigh, North Carolina.

55.     Plaintiff was rated Outstanding in her FY22 performance appraisal. In the report, Mr. Medley, her Rating Official, noted that "Ms. Kandan has served as Acting Field Office Director since August 15, 2022. In that role she has continued to manage the administrative, operational and substantive areas of the New Orleans Field Office."

56.     Plaintiff's FY22 performance appraisal further identified the following areas of success:

   a.  Ms. Kandan's efforts in the 2022 performance year have significantly contributed to significant results for the Houston District and for the New Orleans Field Office.

   b.  Ms. Kandan planned, directed, coordinated and managed all enforcement and case development activities for the Enforcement and Systemic Units through two Enforcement Supervisors, a CRTIU supervisor, 10 Investigators and Investigative Support Assistant with an average pending inventory of 600 charges. Her leadership and supervision over the New Orleans enforcement program and her effective case management has resulted in the office's mid-year transition to more effective case management, improved quality of investigations, and more timely and complete investigations.

   c.  Ms. Kandan faced several staffing challenges throughout the reporting year. Already facing the challenges of 100% telework staffing challenges, Ms. Kandan also was required to supervise the re-entry of staff, COVID-19 concerns, staff's

understanding and effective use of the new records system (ARC), and low performance of some investigators in NOFO. She adeptly navigated the coordination with GSA, agency leadership, technicians and others to handle logistics such as training and support for the new system, GSA cleaning and space development, COVID-19 notices and adherence to agency protocols. Ms. Kandan strategized with the office director to develop plans to address staff performance issues, including developing Performance Improvement Plan approach, mentoring and support, MERG assistance, and scaled and appropriate case assignments.

d. Ms. Kandan also faced management challenges related to the loss of two (short-tenured) new hires, the resignation of a supervisor (and resulting situation of having only one supervisor for an extended period), and the hiring of several new employees. Ms. Kandan was an active participant in these personnel processes, including making recommendations for hiring selections, participating in interviews, recommending promotions and handling reassignments of personnel. Ms. Kandan helped in developing the selection and qualification criteria for positions and assisted in the development of an internal training program for newly hired investigators. She also trained and developed newly hired supervisors, and she maintained a system (including reminders to the office director) to ensure that appropriate and timely actions were taken on promotion recommendations, performance plans, progress reviews and performance evaluations of all Enforcement staff.

57.     Plaintiff's FY22 performance evaluation and Outstanding rating was endorsed by Mr. Irvin as the Reviewing Official.

58.     Plaintiff held the role of Acting Field Director of NOFO through February 10, 2023.

### III.   Plaintiff is Not Promoted to Field Director of the NOFO on the Basis of her Gender, Race, and/or Ethnicity

#### a.   Plaintiff Applies for Promotion to Full Time Director of the New Orleans Field Office

59.     On or about October 6, 2022, Mr. Irvin issued an EEOC internal-only job announcement for the position of Field Director of the NOFO, a GS-15 position.

60.     Plaintiff submitted an application for the position, but it contained a technical error which resulted in her application not being considered for inclusion in a Certificate of

Eligibles.  Upon information and belief, the October job announcement resulted in no other applicants who were qualified.

61.     Upon information and belief, Mr. Kirkland applied for the October job announcement but was deemed not qualified to be considered for the position as it was a Government internal posting only and he lacked the required internal and specialized experience.

62.     For these reasons, Mr. Irvin closed the initial job announcement and reposted the position on November 22, 2022 with a job announcement closing date of November 29, 2022. This time Mr. Irvin posted the position as Open to the Public.

63.     The job announcement provided that to be eligible to apply for the position the candidate must have "at least one (1) year of specialized experience equivalent to the GS-14 level in the federal service.  Specialized experience includes experience enforcing federal employment discrimination laws and experience with Title VII, the ADEA, EPA, Section 501 of the Rehabilitation Act of GINA." A candidate had to meet this requirement within 30 days of the job announcement's closing date.

64.     The position also allowed for Schedule A candidates. Plaintiff applied for the November 22, 2022 job announcement and was included in a Certificate of Eligibles as she met all of the qualifications for the position.

65.     Plaintiff was scheduled for an interview with the interview panel on December 7, 2022.  At the time, she was actually on vacation taking her annual leave in India visiting her elderly ninety-year-old mother. Given that she was off on vacation and the significant difference in time zones with the United States, Plaintiff requested that she be given an accommodation to conduct the interview at a different time to allow her to be at her best.

12

66.     Despite her 24 years of service to the EEOC, her request for an accommodation was denied and her interview was conducted during her vacation and at midnight in India in her mother's home. Plaintiff had to speak low during the entirety of the interview so as to not disturb her mother who was sleeping at the time.

67.     Plaintiff still scored well during her interview notwithstanding the difficulties and, given her (1) extensive experience at the EEOC, (2) the fact that she was the then Acting Field Director of the NOFO, and (3) she had been rated as Outstanding as the Acting Field Director of the NOFO office, she believed she was the best qualified candidate and that she would be selected for the position.[2]

### b. Plaintiff's Substantially Less Qualified Male Subordinate is Promoted to the Field Director Position

68.     On February 7, 2023, Plaintiff learned that Mr. Kirkland – an EEOC employee with less than two years' experience at the agency, with limited EEO experience outside of the EEOC, and who reported directly to Plaintiff from March 2021 through October 2022 – was selected for the position of Field Director of the NOFO.

69.     Plaintiff was devastated when she was not selected and even more so when she learned that it was Mr. Kirkland who was selected instead. Plaintiff was very familiar with Mr. Kirkland because she was his direct supervisor through October 2022. Not only did Plaintiff know she was better qualified for the position, but Plaintiff also knew that Mr. Kirkland did not even qualify to apply for the position because he did not have the requisite twelve (12) months as a GS-14.

---

[2] Upon information and belief, two other male candidates applied for the position and were not selected. However, neither were as qualified as Plaintiff.

70.     In fact, Mr. Kirkland only had approximately five months of GS-14 time when the job announcement was closed.

71.     During the application period, an EEOC Human Resources supervisor reviewed Mr. Kirkland's application and concluded that "it does not make sense to place Mr. Kirkland on a Certificate [of Eligibles for the Field Director position] if we would remove him later. Since the EEOC experience is only creditable at the GS-13 level, please mark him" ineligible.

72.     Mr. Kirkland reached out to the HR supervisor and protested the decision and offered to modify his resume to make it appear that his military service could satisfy the GS-14 time required to apply for the position.

73.     Following the conversation with the HR Supervisor and Mr. Kirkland, Mr. Kirkland resubmitted his resume, this time revised in a manner to amplify his military service time which was previously determined to be not equivalent to GS-14 time. At this point, the HR Supervisor permitted Mr. Kirkland to be referred non-competitively to the Selecting Official, who was Mr. Irvin, for selection consideration.

74.     Mr. Kirkland was never deemed qualified enough to be included in a Certificate of Eligibles and instead was a Schedule A candidate who was permitted to apply non-competitively based on having 30% disabled status and his revised resume.

75.     Plaintiff was shocked to learn that Mr. Kirkland was promoted over her because she was clearly without a doubt the objectively more qualified candidate.

76.     The following chart shows Plaintiff's qualifications compared to Mr. Kirkland's qualifications at the time they applied for the Field Director of the NOFO position in November 2022:

| **Qualifications** | **Plaintiff** | **Mr. Kirkland** |
|---|---|---|
| Experience at EEOC | 24 years | Less than 2 years |
| Experience in EEOC Leadership Positions | 18 years | Less than 2 years |
| Experience as Acting Field Director (position at issue) | 1 year | No |
| Experience as Investigator | 5 years | No |
| Experience as Enforcement Supervisor | 10 years | 1.5 years |
| Experience as Enforcement Manager | 10 years | No |
| Time as GS-14 | 10 years | 5 months |
| Degrees | 3 Master's Degrees | No |
| Rated Outstanding as Acting Field Director | Yes (twice) | No |
| Supervised the Other | Yes (19 months) | No |
| Qualified to be Referred on a Certificate of Eligibles for the Position of Field Director | Yes | No |

77.     In addition to not being as qualified as Plaintiff for the position, Mr. Kirkland openly disregarded EEOC attendance rules and Plaintiff's direct orders while she was the Enforcement Manager of the NOFO.

78.     While Mr. Kirkland worked under Plaintiff's supervision, Plaintiff became aware that Mr. Kirkland was frequently reporting to the Houston District Office instead of the NOFO. Plaintiff learned that Mr. Kirkland lived in Houston and never relocated to New Orleans (and still has not moved to New Orleans despite the Field Director position requiring him to report to New Orleans).

79.     Plaintiff also became aware that when Mr. Kirkland would report to the Houston District Office, he would spend a lot of time meeting with Mr. Irvin even though Mr. Kirkland should have been working in the NOFO office.

80.     The Houston District Office, led by Mr. Irvin, required weekly in-person attendance for supervisors and managers, even during the height of the COVID-19 pandemic, because vital mail needed to be processed timely, like incoming intake mail and notices of right to sue. Plaintiff, as the Enforcement Manager of the NOFO at this time, established a rotating attendance schedule for supervisors and managers to conduct the in-person processing so that no one supervisor had to bear the full burden.

81.     Plaintiff then became aware that Mr. Kirkland was not coming into the NOFO to help with in-person shifts, as other supervisors complained that Mr. Kirkland was not doing his fair share in conducting the in-person processing.  Plaintiff instructed Mr. Kirkland by email and verbally to report to the NOFO office to contribute with in-person processing.

82.     Mr. Kirkland simply ignored Plaintiff's orders, deciding to allow his fellow supervisors and managers to bear the full burden of in-person processing so that he could continue to report to Houston and spend time with Mr. Irvin. Mr. Irvin, who enforced the Houston District's in-person attendance requirements against Plaintiff, implicitly endorsed Mr. Kirkland's failure to report and undermined Plaintiff's authority and leadership as the Enforcement Manager and Mr. Kirkland's direct supervisor.

83.     During this time, Plaintiff's leadership was on full display as she took on the majority of the in-person processing to pick up Mr. Kirkland's slack and to not overburden the other supervisors and managers.

### c. **Plaintiff and other EEOC Colleagues Question the Promotion and Disclose Mr. Irvin's Discriminatory Conduct**

84.     While Plaintiff was shocked and devastated by the decision, she was not surprised that Mr. Irvin would choose Mr. Kirkland.  Mr. Irvin has a reputation for promoting male employees over equally and/or more qualified female employees. He also has a history for promoting other U.S. born African American males over female employees of other ethnicities and races.

85.     Other high-level employees at the EEOC were also shocked by Plaintiff's non-selection and Mr. Kirkland's selection instead.

86.     Shortly after the decision, Plaintiff received a call from the most recent former Field Director of NOFO (a black U.S. born male). He was incredulous that Mr. Kirkland would be chosen over Plaintiff and stated, "how could that happen" and "of all people, Mr. Kirkland?" He also told Plaintiff that Mr. Irvin had a "brotherhood relationship" with Mr. Kirkland and was "hyping up Kirkland's leadership skills" to ensure he was promoted.

87.     The Supervisory Administrative Judge of the NOFO office (a white U.S. born male) stated that he was "surprised Complainant was not selected based upon the fact that she had been Acting Director and had been an 'Enforcement Manager.'"

88.     An EEOC senior employment law attorney in the NOFO (a white U.S. born male) expressed similar sentiments and stated that:

- He was "not aware of any legitimate reason for Mr. Kirkland's selection and [Plaintiff's] non-selection."

-  "[W]omen were treated less favorably than men and held to a different standard" and that "since he started in 2016, the District Director, two Deputy Directors, three Field Directors, and two systemic coordinators selections have all been men."

17

- He "observed Mr. Irvin and other male managers in the New Orleans Field Office and the Houston District Office permit men to speak and behave aggressively, authoritatively, brashly, and antagonistically in meetings, only to express dissatisfaction with women who do the same."

89.     Another employee in the Houston District Office (a Hispanic U.S. born female), where Mr. Irvin works, stated:

- "Mr. Irvin had provided very few to almost no opportunities for qualified females in the office since 2019."

- "[S]he has heard Mr. Irvin make comments about [Plaintiff's] accent as if he was unable to understand her."

- Plaintiff "had not been given the same opportunities and if she was male or of a different race and national origin she would have been given those opportunities." and

- "[M]anagement seemed to be all male, and specifically Black male."

90.     On information and belief, Mr. Irvin currently has at least three gender and/or race discrimination complaints against him in the EEO administrative process, with at least two involving allegations of failure to promote a better qualified female over a less qualified male employee.

### d. Mr. Irvin Admits He "Groomed and Promoted" the Less Qualified Male Subordinate

91.     Immediately following the promotion of Mr. Kirkland, Mr. Irvin provided various reasons for why he selected Mr. Kirkland over Plaintiff, including: (1) the interview panel was not biased and they rated him highest; (2) he exhibited leadership traits in the NOFO office; and (3) Plaintiff was a follower and not a leader.

92.     Each of Mr. Irvin's reasons are a pretext for discrimination as shown by his own words and conduct.

93.      *First*, Mr. Irvin wrote in his own FY23 self-evaluation: "I **groomed** and **promoted** the new Field Director in New Orleans." The FY23 self-evaluation would have included the period October 1, 2022 through February 7, 2023 when Mr. Kirkland was selected for promotion. Mr. Kirkland reported directly to Plaintiff from March 2021 through October 2022. Thus, Mr. Irvin admitted to have "groomed" Mr. Kirkland for the position of Field Director of NOFO prior to the position being announced and while Mr. Kirkland was under Plaintiff's supervision.

94.      *Second,* Mr. Irvin's statement concedes that he had been grooming Mr. Kirkland for the Field Director position before Mr. Kirkland and Plaintiff even applied for it in November 2022 and, that he (Mr. Irvin), already intended to select Mr. Kirkland and Plaintiff therefore stood no chance to be selected despite her overwhelmingly superior qualifications. His statement also concedes that he was the decision maker, not the interview panel, and that in fact the interview panel's rating was not determinative of his decision.

95.      *Third*, as discussed above, Mr. Irvin was the Reviewing Official who endorsed Plaintiff's Outstanding performance rating during FY22, which included time as the Acting Field Director in charge of leading the entire NOFO.

96.      *Fourth,* Mr. Irvin could not have observed Mr. Kirkland's leadership in the NOFO office because as discussed above, Mr. Kirkland was not reporting to the NOFO office in violation of Plaintiff's orders and the Houston District's own in-person attendance protocols for supervisors and managers to conduct in-person processing.

97.      *Fifth,* the senior employees who were actually working at the NOFO office with Plaintiff, including a supervising administrative judge and the EEOC's senior trial attorney for

19

NOFO, both did not question Plaintiff's leadership and qualifications and both were "surprised" that Mr. Kirkland would be promoted over Plaintiff.

98. *Lastly,* Mr. Irvin's statements, including those related to Plaintiff's accent, and conduct make it clear that the failure to promote Plaintiff was motivated by discrimination based on Plaintiff's gender (female), race (Asian), and national origin (Indian).

## FIRST CAUSE OF ACTION
### (Gender Discrimination – Title VII Failure to Promote)

99. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth.

100. Defendants' actions in failing to promote Plaintiff were motivated by gender discrimination in violation of Title VII.

101. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to, loss of earnings, loss of career opportunities, and emotional distress.

## SECOND CAUSE OF ACTION
### (Gender Discrimination – Louisiana Employment Discrimination Law)

102. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth.

103. Defendant's actions in failing to promote Plaintiff were motivated by gender discrimination in violation of Louisiana Employment Discrimination Law.

104. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to, loss of earnings, loss of career opportunities, and emotional distress.

## THIRD CAUSE OF ACTION
### (Race and National Origin Discrimination – Title VII Failure to Promote)

105.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth.

106.     Defendants' actions in failing to promote Plaintiff were motivated by race and national origin discrimination in violation of Title VII.

107.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to, loss of earnings, loss of career opportunities, and emotional distress.

## FOURTH CAUSE OF ACTION
### (Race and National Origin Discrimination – Louisiana Employment Discrimination Law)

108.     Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth.

109.     Defendants' actions in failing to promote Plaintiff were motivated by race and national origin discrimination in violation of Louisiana Employment Discrimination Law.

110.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to, loss of earnings, loss of career opportunities, and emotional distress.

## DEMAND FOR JURY TRIAL

111.     Plaintiff hereby demands a trial by jury for all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for a judgment as follows:

      a.  For a declaratory judgment stating that Defendants' practices violate state and federal law;

b. For promotion to the position of Field Director of NOFO as a GS-15 (with the appropriate salary "step") as of February 7, 2023 or an award of front pay in lieu thereof;

c. For an award of lost wages, including benefits, from the date of the failure to promote on February 7, 2023;

d. For an award of reasonable attorney's fees;

e. For costs of suit;

f. For injunctive and equitable relief as provided by law;

g. For an award of compensatory damages to be proven at trial;

h. For pre and post-judgment interest; and

i. For such other and further relief as may be just and proper.

Dated: August 26, 2024

Respectfully submitted,

**CHIRINOS LAW FIRM PLLC**

By: */s/ Tulio D. Chirinos*

Tulio D. Chirinos (TA)
La. Bar Roll No. 35079
370 Camino Gardens Blvd.,
Suite 106
Boca Raton, FL 33432
Tel.: (561) 299-6334
tchirinos@chirinoslawfirm.com

**CANO LAW LLC**

Carlos Cano
La. Bar Roll No. 36822
2701 Metairie Rd.
Metairie, La.  70001
Direct: (504) 909-3822
Office: (504) 910-2266
Fax: (504) 910-2266
ccano@canolaw.com

***Attorneys for Plaintiff***