UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UMA R KANDAN | CIVIL ACTION |
| VERSUS | NO. 24-2089 |
| CHARLOTTE BURROWS ET AL. | SECTION: (3) |

## <u>ORDER AND REASONS</u>

This lawsuit arises from Equal Employment Opportunity Commission ("EEOC") Houston District Director Rayford Irvin's selection of Michael Kirkland (a male)[1] rather than Uma Kandan (a female)[2] for the position of Field Director for the New Orleans Field Office ("NOFO").[3] EEOC filed a Motion in Limine to Exclude Evidence (R. Doc. 47) relative to testimony (and any supporting exhibits) from three EEOC employees that directly compares the qualifications of Kandan and Kirkland.[4] EEOC also seeks to exclude testimony (and any supporting exhibits) relative to other hiring and promotion decisions by Irvin in which he chose male candidates over female candidates.[5] For the following reasons, the motion is granted in part and denied in part.

---

[1] R. Docs. 35-2 at 1, 36.

[2] R. Doc. 36-7.

[3] R. Doc. 13, ¶¶ 1–5.

[4] R. Doc. 47-1 at 1.

[5] *Id.*

## I.    Potential Coworker Testimony

EEOC seeks to limit the testimony of three witnesses: Kevin C. Rung, Andrew Kingsley, and Jennifer Ortiz Prather.[6] The potential testimony arises from the following contexts.

### A.    Kevin C. Rung, EEOC Supervisory Administrative Judge.

Rung is a GS-14 Supervisory Administrative Judge at the NOFO.[7] His first-line supervisor is Irvin.[8] Rung has known Kandan as a NOFO colleague for approximately 20 years.[9] He has also known Kirkland as a NOFO colleague for approximately 18 months.[10] Rung was not involved in Kirkland's selection as NOFO Field Director but expressed surprise that Kandan was not chosen based on her experience at EEOC, including as Acting Field Director.[11]

Rung is aware that Jennifer Mitchem, a female EEOC employee, complained when Irvin chose Kirkland (then an outside candidate) rather than Mitchem for the position of enforcement supervisor in 2021.[12] Rung was familiar with Mitchem's background and experience.[13] At the time, Rung had not yet had an opportunity to work with Kirkland.[14] Rung felt that Mitchem was "probably the better qualified

---

[6] *Id.* at 3.
[7] R. Doc. 47-2 at 1.
[8] *Id.*
[9] R. Doc. 55-2 at 17.
[10] *Id.* at 6.
[11] R. Doc. 47-2 at 3.
[12] R. Doc. 55-2 at 10.
[13] *Id.* at 9–10.
[14] *Id.* at 14.

candidate" than Kirkland given her knowledge of the law, background, and years of experience.[15]

### B.    Andrew Kingsley, Special Assistant/Senior Attorney Advisor.

From 2016 to 2022, Kingsley was a trial attorney in the NOFO.[16] For part of that time, he was also the union representative.[17] As a union representative, Kingsley reviewed resumes relative to the enforcement supervisor position for which Kirkland was selected in 2021.[18]

Kingsley noted that both candidates had served in the U.S. Army, but Mitchem was a major (GS-12) equivalent), while Kirkland was a command sergeant major (GS-6 equivalent).[19] Kingsley also noted that Mitchem had more than 20 years of experience at the agency, while Kirkland had never worked there and had "limited, if any," analogous experience.[20] Finally, he noted that Mitchem had a bachelor's degree, while Kirkland's resume listed no degree.[21] He also characterized Mitchem as among the most, and perhaps the most, capable and competent investigators.[22] The disparity between Mitchem and Kirkland's qualifications concerned Kingsley.[23]

---

[15] *Id.* at 13–14.
[16] R. Doc. 47-3 at 3.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

Based on their backgrounds and working with both individuals, Kingsley believes Mitchem was "substantially more qualified" than Kirkland.[24]

Kingsley also had firsthand knowledge relative to the selection of Kirkland over Kandan for the NOFO Field Director position.[25] Kingsley notes that he was familiar with Kirkland's earlier resume from when he was first hired and that he reviewed Kandan's resume at her request.[26] By Kingsley's summary, Kandan was multilingual and Kirkland was bilingual; Kandan had two or three master's degrees and Kirkland did not have a bachelor's or master's degree; Kandan had about 24 years of experience at the agency while Kirkland had about two years of experience; and Kandan had lived in New Orleans for 24 years while Kirkland had never lived there.[27] Kingsley described both candidates as hardworking and sociable.[28] He was "very surprised" when Irvin chose Kirkland.[29] The "drastic disparity" in Kandan and Kirkland's qualifications concerned Kingsley such that he reported it to the agency's Office of Civil Rights.[30] Kingsley was told that he could not submit a complaint in his capacity as a bystander.[31] Kingsley avers that he does not know that gender, race, or

---

[24] R. Doc. 55-1 at 8.
[25] R. Docs. 55-1 at 13–15, 55-1 at 16–20.
[26] *Id.*
[27] R. Doc. 47-3 at 4–5. Kingsley explained that the Field Director position required the candidate to be the "public face of the agency in that locality." R. Doc. 55-1 at 18–19.
[28] R. Doc. 47-3 at 5.
[29] R. Doc. 55-1 at 16.
[30] R. Doc. 47-3 at 5; *see also* R. Doc. 55-1 at 21 (noting office's name change).
[31] R. Doc. 47-3 at 5.

national origin was the reason for Kirkland's selection, but Kingsley is also not aware of any legitimate reason for Irvin's decision.[32]

Kingsley also noted in connection with Kandan's discrimination claim that he has observed that women are treated less favorably than men and held to a different standard in both the NOFO and Houston District Office.[33] Kingsley has heard EEOC staff refer to Irvin and his managers as a "boys' club."[34] Kingsley has observed Irvin and other male managers in the NOFO and the Houston District Office "permit men to speak and behave aggressively" in meetings, while expressing dissatisfaction toward or disciplining women who do the same.[35] According to Kingsley, "Women are expected to be demure, yet by being demure, they are considered incapable of being effective leaders."[36] Since Kingsley started at the agency in 2016, the Houston district director, two deputy directors, three field directors, and two systemic coordinators have all been men.[37] Kingsley reports that Kandan and other women at the agency were "distraught" when they learned that Kandan had not been selected.[38]

---

[32] *Id.* at 6.
[33] R. Doc. 47-3 at 6, 8.
[34] R. Doc. 47-3 at 6.
[35] *Id.* at 9.
[36] *Id.*
[37] *Id.* at 6.
[38] R. Doc. 55-1 at 21.

C.    **Jennifer Ortiz Prather, EEOC Supervisory Attorney.**

Ortiz Prather is an EEOC attorney in the Houston District Office.[39] She has been with the agency since 2010.[40] Her second-line supervisor is Irvin.[41]

Ortiz Prather believes that Irvin has provided almost no professional development opportunities to qualified females.[42] In 2019, Ortiz Prather filed a complaint when Irvin did not allow her to apply for the GS-15 Deputy position in Houston.[43] She states that Irvin has been on notice since at least that date relative to the lack of professional development opportunities afforded to females.[44]

In 2023, Ortiz Prather applied for a Deputy Director position but was not selected.[45] She reports that, like Kandan, she has "many more years of service" than the selected male candidate.[46] Ortiz Prather states that neither Kandan nor herself, despite years of service and positive ratings, have been offered development and promotion opportunities and that Irvin consistently selects males.[47] Ortiz Prather states that the disparity is "incredibly striking."[48] Ortiz Prather believes that Irvin would have provided Kandan with professional development opportunities if she were male.[49] She feels similarly relative to two other female EEOC employees (Marina

---

[39] R. Doc. 47-4 at 1.
[40] *Id.*
[41] *Id.*
[42] *Id.* at 3.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 4.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

Guerra and Elizabeth Henderson).[50] According to Ortiz Prather, the lack of development opportunities has resulted in a "slew" of female candidates leaving the Houston office to pursue EEOC positions elsewhere.[51] When Ortiz Prather discussed that one such candidate had done well elsewhere, Irvin allegedly responded, in effect, that he would never have hired her and that it was a mistake.[52]

According to Ortiz Prather, Irvin told her that Kandan was "barely" qualified for her position.[53] Ortiz Prather further reports that Irvin made comments about Kandan's accent and complained about her use of leave to visit family in India.[54] Ortiz Prather notes that Irvin made these comments "without seeming to have any fear" relative to his behavior.[55] She reports being shocked that his behavior did not seem to rise to the level to be addressed.[56] Ortiz Prather states that Irvin questioned Kandan's management abilities, in response to which Ortiz Prather questioned Irvin about whether he had given Kandan guidance or opportunities that he provided to less qualified males.[57] Ortiz Prather believes that the NOFO Field Director selection would have been different if Kandan had been given similar professional development opportunities.[58] Ortiz Prather believes that Irvin intentionally disseminated negative

---

[50] *Id.* at 3.
[51] *Id.* at 3–4.
[52] *Id.* at 6.
[53] *Id.* at 2.
[54] *Id.* at 3.
[55] *Id.* at 5.
[56] *Id.*
[57] *Id.* at 3.
[58] *Id.*

information about Kandan because he wanted to perpetuate a negative view of her at the agency.[59]

Ortiz Prather believes that Kirkland was not qualified for the Field Director position, including because of his communication skills, legal knowledge, and background, such that both Ortiz Prather and other staff felt shocked at his selection.[60] She suspects that Kirkland was given the questions and answers before his panel interview.[61] Ortiz Prather doubts that Kirkland could have scored more highly than Kandan without additional help or support, which was not available to female employees.[62]

Ortiz Prather also testified that Irvin required her to interview for a promotion while Ortiz Prather was traveling internationally with her family while on planned leave.[63] She was told that she had to interview while abroad because a selection was imminent.[64] She believes that Irvin knew that the interview would be difficult for Ortiz Prather given technological limitations associated with being out of the office.[65] According to Ortiz Prather, Irvin, with help from Shanita Williams, was in control of interview logistics and denied her request for a schedule change given the imminent nature of the selection—but then waited to choose until two weeks after Ortiz Prather

---

[59] *Id.* at 6.
[60] R. Doc. 55-3 at 10–11.
[61] R. Docs. 55-3 at 22, 24–25.
[62] R. Doc. 55-3 at 27.
[63] *Id.* at 12.
[64] *Id.* at 13.
[65] *Id.*

had returned to the office.[66] Ortiz Prather believes it would have been easy for her interview to occur after she returned from leave.[67]

Finally, Ortiz Prather states that there were numerous complaints about Irvin prior to his transfer from Phoenix to Houston and that he has been found "guilty" of different discrimination, harassment, and retaliation.[68] She alleges that Irvin harbors and has acted on an employment preference for males.[69] She identified multiple males (including one who served on Kirkland and Kandan's interview panel) whom she believes Irvin has groomed for leadership opportunities and has selected over more qualified females.[70]

## II. The Federal Rules of Evidence do not support a blanket prohibition on testimony comparing Kandan and Kirkland's qualifications or discussing the possible presence of discrimination.

EEOC does not seek to exclude coworker testimony discussing each candidate's qualifications.[71] EEOC does seek, however, to exclude testimony that would compare Kandan or Kirkland's "relative fitness for the NOFO Field Director position."[72] EEOC relies on Rules 602, 701, 702, and 403 of the Federal Rules of Evidence.[73]

With respect to Rule 602, which requires that a lay witness have personal knowledge, EEOC maintains that Rung, Ortiz-Prather, and Kingsley's beliefs about

---

[66] *Id.* at 13–14.
[67] *Id.* at 14.
[68] *Id.* at 18.
[69] *Id.* at 20.
[70] *Id.* at 20–21.
[71] R. Doc. 58 at 2–3.
[72] *Id.* at 1.
[73] R. Doc. 47-1 at 3–5.

what "would make someone a successful Field Office Director" are not reliable because none of them have worked in or supervised that role.[74] Moreover, EEOC maintains, these employees lack the "full set of facts" upon which to base such beliefs.[75] These arguments can be made through cross-examination, however.[76] Provided that the witnesses' beliefs reflect personal knowledge of the candidates, there is no basis to exclude this testimony under Rule 602.

Similarly, EEOC's challenge under Rules 701 and 702 lacks merit. Rule 701 allows the admission of fact witness opinions when they are rationally based on the witness's perception and "helpful to clearly understanding the witness's testimony or to determining a fact in issue," provided that the opinions are not based on specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. "Courts generally hold admissible under Rule 701 evidence in the form of lay opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices." *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1179 (10th Cir. 2001) (citing *e.g., Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1466–67 (5th Cir. 1989). And "[c]ourts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the

---

[74] R. Doc. 58 at 2.

[75] *Id.*

[76] For example, during his deposition, Kingsley made clear that he was not involved in Kandan's selection process and "there is likely information that I did not see." R. Doc. 58 at 3.

underlying circumstances." *Hansard v. Pepsi-Cola Metro. Bottling Co.,* 865 F.2d 1461, 1466 (5th Cir. 1989).

The anticipated coworker testimony presented by Kandan relative to candidate qualifications and potential reasons for Irvin's decision will counter the anticipated testimony presented by EEOC that Kirkland was the more qualified candidate and that discrimination did not affect Irvin's decision. *See Brooks v. Barnhart*, 78 F. App'x 52, 59 (10th Cir. 2003) (concluding that a district court abused its discretion by refusing to consider coworker testimony). Moreover, allowing Kandan and Kirkland's coworkers to explain their observations of the two candidates while prohibiting the use of comparison adjectives would impose an artificial and confusing constraint on the testimony. *See id.* at 58–59 (concluding that it was an abuse of discretion to allow coworkers to testify only as to their surprise at an employment decision without allowing them to explain why they were surprised). Rules 701 and 702 permit coworkers to compare candidates and testify as to their subjective beliefs as to discrimination so long as the witness can establish a factual foundation for those beliefs. *See Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 548 (5th Cir. 1996) ("Vander Pan's opinion testimony that Ideal was phasing out older workers was based on his perception and helped the jury determine whether Ideal discriminated.").

EEOC's alternative argument that the evidence should be excluded under Rule 403 also fails. EEOC argues that there is a risk of prejudice because a jury might find an EEOC employee's testimony about alleged discrimination particularly persuasive

given EEOC's mission.[77] "Merely because the testimony is adverse to the opposing party does not mean it is *unfairly* prejudicial." *EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1094 (5th Cir. 1994) (quotation omitted). Moreover, the possibility that a juror may find EEOC employees especially persuasive applies with equal force to both sides' witnesses. And, to be clear, this case does not involve any formal determination by EEOC that discrimination occurred. To the contrary, the parties seek to present competing testimony from EEOC employees in their individual coworker capacities. *Compare with Guerra v. N. E. Indep. Sch. Dist.*, 496 F.3d 415, 419 (5th Cir. 2007) ("Second, the EEOC evidence spoke directly to the ultimate issue in the case. It would likely have prejudiced the jury since the EEOC made its own factual determination that age discrimination occurred."). Finally, the record reflects that these three witnesses have different perspectives from that of Malcom Medley, who served as the NOFO Field Director before Kirkland's selection, such that their testimony will not be improperly duplicative of his testimony. *United States v. Fields*, 483 F.3d 313, 356 (5th Cir. 2007) ("Rule 403 does not ban *per se* all duplicative evidence. It is not required that each piece of evidence admitted have an entirely unique theory of relevancy.").

---

[77] R. Doc. 47-1 at 5.

III.  **Whether to admit evidence of Irvin's prior selections of male applicants over female applicants requires a case-by-case analysis.**

EEOC seeks to exclude evidence of other times when Irvin selected a male applicant over a female applicant.[78] EEOC challenges the relevance of this evidence because Kandan has not brought a pattern-and-practice or hostile-work-environment claim.[79] Whether Irvin previously chose male candidates over female candidates is relevant, however, to Kandan's contention that Irvin's decision to select Kirkland rather than Kandan is discriminatory. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) ("[Plaintiff] and coworkers Jemison and Thomas were discriminated against by the same supervisor, Farley, so the experiences of Jemison and Thomas are probative of Farley's intent to discriminate.").

The Fifth Circuit has held that "other-acts evidence may be relevant and admissible in a discrimination case to prove an employer's intent or pretext." *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007). A history of hiring or promoting males over females may be probative of intent, plan, motive, knowledge, and absence of mistake or accident. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774–75 (5th Cir. 2009) (concluding that a district court did not abuse its discretion in admitting evidence that a box had a "particular *modus operandi* in making sexual overtures to female subordinates"); *Hitt v. Connell*, 301 F.3d 240, 249–50 (5th Cir. 2002). Similarly, "behavior toward or comments directed at other employees in the protected group" is one type of circumstantial evidence that can

---

[78] R. Doc. 47-1 at 6.
[79] *Id.* at 7.

13

support an inference of discrimination. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008) *as corrected* (Jan. 21, 2009). Finally, evidence that Irvin "discriminated against women in the past could help undermine" the evidence that his decision was the product of a neutral and fair interview-panel process. *See Vance v. Union Planters Corp.,* 209 F.3d 438, 445 (5th Cir. 2000). Thus, this evidence is relevant under Fifth Circuit law.

In the alternative, EEOC argues that this evidence is inadmissible under Rule 403. EEOC relies primarily on *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296 (5th Cir. 2000). In *Wyvill*, the Fifth Circuit set forth certain criteria relative to determining whether evidence of discrimination against other employees is admissible in a pattern-or-practice case. *Wyvill*, instructs:

> This court and others have held that testimony from former employees who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge.

212 F.3d at 302 (citation omitted). As EEOC recognizes, however, Kandan's case does not involve a pattern-or-practice claim. And, in any event, *Wyvill*'s framework supports the admission of most of the other-acts evidence at issue in EEOC's motion. In contrast to the evidence held inadmissible in *Wyvill,* the selection decisions at issue in this case were made by the same supervisor (Irvin), the employees worked within the Houston or New Orleans offices (which interface with one another), and the selection decisions were close in time to Kirkland's selection over Kandan. Further, "the key question is not whether" Kandan and the nonparties against whom Irvin

14

allegedly discriminated are similar "in every way," but whether those other instances of discrimination are relevant "in the context of the facts and arguments" in this case. *See Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 425 (8th Cir. 2017) (quotation omitted).

In *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008), the Supreme Court set forth a framework for assessing the admissibility of other-acts evidence.[80] In that case, the "District Court excluded testimony by nonparties alleging discrimination at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff." *Id.* at 380. In a unanimous decision, the Supreme Court held that it is reversible error to impose a per se bar on evidence of discrimination by other supervisors (i.e., not the supervisor who prompted a plaintiff's claim). *Id.* at 388. Justice Thomas explained, "The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* Given that the Supreme Court has rejected a per se bar under these circumstances, there can be no question that it would be reversible error to impose such a bar in a case like this one where the other-acts evidence implicates the same supervisor.

---

[80] This framework addresses a "very different kind of evidence" than that used to show differential treatment as part of a prima facie case. *See Sprint/United*, 552 U.S. at 386. Here, rather than showing that Irvin treated her differently than someone not in her protected class, Kandan is attempting to show that Irvin discriminated against other members of Kandan's protected class. *See id.*; *see also Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 122–23 (Mo. 2015).

To determine the relevance of nonparty discrimination evidence under *Mendehlsohn*, courts consider factors including the identities of the nonparties, the nature and substance of the alleged discrimination, and its temporal proximity to the challenged decision. *See Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (internal citation omitted). Thus, where other-acts evidence involves "the same place, the same time, [and] the same decision makers," it is more likely to be admissible. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 812 (8th Cir. 2011). "[W]hether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated" are also relevant considerations. *Elion v. Jackson*, 544 F. Supp. 2d 1, 8 (D.D.C. 2008).

The Court is cognizant of EEOC's concern that allowing other-acts evidence of alleged discrimination by Irvin will result in mini-trials.[81] While this concern "is legitimate," acting on it in every case "would tend to exclude any 'other acts' evidence, regardless of how closely related it is to the plaintiff's circumstances." *Griffin*, 689 F.3d at 600. The Supreme Court's decision in *Mendelsohn* prohibits this approach. The Court will address evidence of other discrimination on an incident-by-incident basis.

The earliest prior incident on which Kandan relies is Irvin's decision in 2019 not to allow Ortiz Prather to apply for the GS-15 Deputy Director position in Houston.[82] According to Ortiz Prather, Irvin told her that she was not qualified for

---

[81] *See id.* at 8.
[82] R. Doc. 47-4 at 3.

16

that position and (later similarly stated to Ortiz Prather that Kandan was "barely" qualified for her own position).[83] Instead, Irvin selected a male candidate, Travis Nicholson.[84] Both the 2019 incident and the 2023 events underlying this lawsuit involve the same decisionmaker (Irvin) selecting a candidate for whom he would be a supervisor. Both incidents also involve Irvin's assessment that a female candidate was less qualified for the position than a male candidate. And both incidents appear to involve a situation in which the female candidate had significantly more years of agency experience than the male candidate. The factual parallels between the alleged discriminatory incidents militates against the moderate temporal gap.

Beyond involving an alleged discriminatory selection, an additional strand of facts links the 2019 selection to Kandan's case. Nicholson was a member of Kandan's interview panel and had exchanged previous communications with Irvin relative to Kandan's readiness (or lack thereof) to serve as an acting or permanent Field Director.[85] Nicholson had known Kirkland for about 30 years and been stationed with him in the military.[86] Ortiz Prather believes that Nicholson may have provided Kirkland with the panel interview questions or other information that would have compromised the neutrality of the process.[87] The current record supports allowing evidence of Irvin's decisions in 2019 relative to the selection of Nicholson as Deputy Director.

---

[83] *Id.* at 2.
[84] R. Doc. 35-8, ¶¶ 2, 7.
[85] *Id.*, ¶¶ 3, 8.
[86] R. Doc. 44-1 at 4.
[87] R. Doc. 55-3 at 22–25.

The next incident at issue is Irvin's decision to hire Kirkland rather than Mitchem as a Supervisory Investigator in 2021.[88] In doing so, Irvin hired a male candidate over a female candidate with greater agency experience.[89] In addition, Mitchem's experience in the military appears to have been more extensive (or at a higher level) than Kirkland's.[90] This is relevant to addressing Irvin's potential reliance on military experience as a factor in promoting Kirkland rather than Kandan. Finally, the selected candidate (Kirkland) is the same candidate selected over Kandan in this case. Kandan's narrative that Irvin groomed and promoted Kirkland on a discriminatory basis renders further relevance to the 2021 decision.

The final incident discussed in detail in the briefing is Irvin's selection of a male candidate for Deputy Director of the Houston District in 2023 over Ortiz Prather.[91] Here, Ortiz Prather was subject to the panel interview process while on pre-approved and long-planned leave.[92] This may be analogous to the process that Kandan underwent. Moreover, the decision was made close in time to Irvin's decision to hire Kirkland as Field Director. Thus, evidence relative to this incident also survives the Rule 403 balancing test on this record. EEOC's motion in limine is denied as to Irvin's 2019, 2021, and 2023 selection decisions as set forth above.

The record, including the briefing, contains passing references to other alleged instances of discriminatory selections by Irvin, including before his transfer to

---

[88] R. Docs. 47-1 at 6, 35-3 at 2.
[89] R. Docs. 55-1 at 5, 35-2 at 1, 36.
[90] R. Doc. 55-1 at 6.
[91] R. Docs. 47-4 at 3–4, 47-1 at 7.
[92] R. Doc. 55-3 at 14.

Houston. The record does not contain sufficient information, however, to undertake the requisite individualized assessment of these other incidents. Thus, EEOC's motion in limine is granted as to alleged discriminatory selection decisions that are not analyzed above.

Much of the above analysis is based on the evidence and argument submitted in connection with the briefing, rather than the evidence that will be developed at trial. This ruling is provisional and may be revisited depending on the evidence developed at trial. *See Adams v. Mem'l Hermann*, 973 F.3d 343, 351 (5th Cir. 2020) ("Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum ....") (quoting *Old Chief v. United States*, 519 U.S. 172, 187 (1997)).

For the foregoing reasons,

**IT IS ORDERED** that EEOC's Motion in Limine (R. Doc. 47) is **GRANTED IN PART** and **DENIED IN PART**. Kandan may introduce evidence of Irvin's 2019, 2021, and 2023 selection decisions but is precluded from introducing evidence of any other allegedly discriminatory selection decisions.

New Orleans, Louisiana, September 26, 2025.

_____
EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE