UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UMA R. KANDAN | CIVIL ACTION |
| VERSUS | NO. 24-2089 |
| CHARLOTTE BURROWS, ET AL. | DIVSION (3) |

**ORDER AND REASONS**

This lawsuit arises from Equal Employment Opportunity Commission ("EEOC") Houston District Director Rayford Irvin's selection of Michael Kirkland (a male) rather than Uma Kandan (a female) for the position of Field Director for the New Orleans Field Office.[1] EEOC filed a Motion in Limine to Exclude Evidence and Testimony of Race or National Origin Discrimination (R. Doc. 83). EEOC seeks to exclude evidence of alleged workplace statements Irvin made that criticized Kandan's performance and pertained to her race or national origin, as well as evidence of an alleged "head bobble" gesture perceived as discriminatory.[2] For the following reasons, the motion is granted in part and denied in part, subject to being revisited as evidence develops at trial.

---

[1] R. Docs. 35-2 at 1, 13, ¶¶ 1–5.
[2] R. Doc. 83-1 at 1–2.

1

I. **Background**[3]

Kandan is an Indian-born naturalized United States citizen.[4] She originally brought a claim for race and national origin discrimination, but she later voluntarily dismissed that claim.[5] Her only remaining claim is for intentional sex discrimination—i.e, that Irvin discriminated against Kandan based on sex when he chose Kirkland rather than Kandan for the Field Director position.[6] To help prove that claim, Kandan intends to elicit the testimony of Jennifer Ortiz Prather at trial.

Ortiz Prather is an EEOC attorney in the Houston District Office.[7] Her second-line supervisor is Irvin, who also works in the Houston District Office.[8] According to Ortiz Prather, Irvin would "pit managers against each other," including "especially with females."[9] Ortiz Prather testified that Irvin would also attack, belittle, and bully female employees more than male employees.[10] Ortiz Prather testified during her deposition that she heard Irvin make critical comments about Kandan's accent "as if he was unable to understand her."[11] While Irvin commented on Kandan's accent, he allegedly used a "head bobble" gesture, which Ortiz Prather found "racially offensive,

---

[3] More detailed information about Kandan's claims is available in the Court's ruling denying summary judgment. *Kandan v. Lucas*, No. CV 24-2089, 2025 WL 2694633, at *2 (E.D. La. Sept. 22, 2025).
[4] R. Doc. 13, ¶ 1.
[5] R. Docs. 13, ¶¶ 102–04, 72.
[6] There is no hostile work environment claim.
[7] R. Doc. 47-4 at 1.
[8] *Id.*
[9] R. Doc. 85 at 4 (citing R. Doc. 85-1 at 6).
[10] R. Doc. 85-1 at 25–26.
[11] R. Doc. 36-28 at 4.

2

insensitive, national origin discrimination" and "egregious."[12] Ortiz Prather also testified that Irvin criticized the length of leave taken by Kandan to visit family in India.[13] EEOC seeks to preclude Ortiz Prather from testifying as to Irvin's criticism of Kandan's accent (and use of a head bobble gesture) and use of leave to visit family in India.[14]

II. **Ortiz Prather's testimony about Irvin's criticism of Kandan is relevant, but Ortiz Prather may not opine on whether Irvin discriminated based on race or national origin.**

   A. **Irvin's alleged criticism of Kandan is relevant to her sex-discrimination claim.**

EEOC argues that Irvin's actions and comments regarding Kandan's race and national origin are not relevant to Kandan's sex-discrimination.[15] EEOC relies on Rule 401 of the Federal Rules of Evidence.[16] That rule instructs that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" (i.e., the evidence must be probative) and "the fact is of consequence in determining the action" (i.e., the evidence must be material). *See Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, No. CV 04-0997, 2006 WL 8446254, at *2 (E.D. La. Mar. 7, 2006) (citing *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)).

---

[12] R. Doc. 83-2 at 2, 4.
[13] *Id.*
[14] R. Doc. 83-1.
[15] *Id.* at 2.
[16] *Id.*

3

EEOC maintains that Irvin's alleged statements about Kandan's accent and use of leave are neither probative nor material. Irvin's suggestion that Kandan's accent made her difficult to understand, however, goes to her communication and management abilities. Similarly, his alleged statement about her use of leave goes to his opinion of her family obligations and job performance. Such statements are particularly relevant given that Irvin was the decisionmaker underlying the challenged promotion decision. This criticism by Irvin may show that he: (1) treated Kandan differently because of her sex[17]; (2) undermined Kandan's efforts at professional development; and (3) attempted to influence others at EEOC to view Kandan in a negative light.[18] The fact that these statements also touch on Kandan's race or national origin does not deprive them of their probative value.

The evidence above, however, is *not* relevant to showing that Irvin discriminated against Kandan based on race or national origin. Kandan's voluntary dismissal of her race and national origin claims renders any such showing immaterial. To ensure that the jury does not consider the evidence for the impermissible purpose of imposing liability for race or national origin discrimination, the parties may provide a proposed limiting instruction.

---

[17] At one point, Irvin reported that he had groomed Kirkland for the position.
[18] One of EEOC's primary defenses is that Irvin relied primarily on interview scores from neutral panelists in making his promotion decision. Kandan maintains that Irvin had primed one of the panelists (who also worked in the Houston District Office) to view Kandan in a negative light before the panel interview.

### B. Ortiz Prather's characterization of Irvin's behavior as reflecting discrimination based on race or national origin is not relevant to Kandan's sex-discrimination claim.

As explained above, Ortiz Prather not only relayed statements allegedly made by Irvin about Kandan, but also characterized those statements as "racially offensive, insensitive, national origin discrimination" and "egregious."[19] Ortiz Prather's beliefs about the existence of race or national origin discrimination are not relevant to Kandan's claim for sex discrimination. *See Knights v. Bank United of Texas Federal Savings Bank,* 192 F.3d 127 (5th Cir. 1999); *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 357–58 (5th Cir. 1995). Thus, they are inadmissible under Rule 401 or, as set forth below, alternatively under Rule 403.

### III. Irvin's criticism of Kandan, but not his alleged use of a head bobble gesture, is admissible under Rules 403 and 404(b).

EEOC argues that evidence of race or national origin discrimination by Irvin is impermissible character evidence under Rule 404(b) and, in the alternative, subject to exclusion under Rule 403. Both Rule 404(b) and Rule 403 require a threshold determination of relevance. As explained above, Irvin's alleged criticism of Kandan (including the criticism that mentioned her accent and travel to India) is relevant to his assessment of her job performance. Thus, this evidence is not merely an attempt to "disparage Irvin as a person" and meets the threshold requirement for relevance under Rules 404(b) and 403.[20] Ortiz Prather's belief that Irvin engaged in national

---

[19] R. Doc. 83-2 at 2, 4.
[20] R. Doc. 83-1 at 5.

5

origin and race discrimination, on the other hand, is not relevant to Kandan's sex-discrimination claim. Thus, testimony as to Ortiz Prather's belief that Irvin engaged in race or national origin discrimination alternatively fails to pass muster under Rule 403 and 404(b).[21]

Rule 404(b) and Rule 403 also require the Court to engage in a balancing test to determine whether relevant evidence's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As the Fifth Circuit has observed:

> [C]ircumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices—evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.

*Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 360 (5th Cir. 1995) (citation omitted).

Ortiz Prather's testimony about Irvin's criticism of Kandan is relevant and potentially significant for the reasons noted above. Importantly, the remarks at issue were made by the decisionmaker about the plaintiff. *See Gee v. Principi*, 289 F.3d

---

[21] In the alternative, even if Ortiz Prather's subjective belief that Irvin engaged in race discrimination is relevant for some reason not articulated in Kandan's briefing (e.g., demonstrating a willingness to act with impunity), that evidence would still fail under Rule 403 given the absence of any race discrimination claim here.

342, 346 (5th Cir. 2002) (noting the "longstanding principle that, in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker") (citation omitted); *Richardson v. Prairie Opportunity, Inc.,* 470 F. App'x 282, 284 (5th Cir. 2012) (confirming that this principle extends to both retaliation and discrimination claims). EEOC cites no case in which a court excluded evidence of a decisionmaker's statements about the plaintiff's work performance. True, the evidence at issue is somewhat unique in that it saddles two claims, one of which is going to trial and one of which has been dismissed. And the Court recognizes the risk of prejudice or confusion that could result if the specter of race or national origin discrimination distracts the jury. On this record, however, there is no reason to believe that offering the parties the opportunity to propose a limiting instruction will mitigate any risk of prejudice or confusion.

The "head bobble" gesture allegedly used by Irvin when discussing Kandan's accent presents a closer call. If, hypothetically, Irvin had made a gesture mocking the way that Kandan walks or her appearance (neither of which is at issue here), the gesture would be relevant to show that Irvin undermined Kandan to a colleague. The same is true of the alleged head bobble gesture. The gesture also provides corroboration for Ortiz Prather's belief that Irvin's intent was to undermine Kandan rather than, for example, raise any sincere concern about the intelligibility of her speech. Thus, testimony about the alleged head bobble gesture is of at least some relevance.

7

The head bobble gesture, however, may present a significant risk of confusing the issues and unduly prejudicing EEOC. Some jurors may be familiar with the gesture and its connotations. Others may not. Whether and how to describe the gesture could end up emphasizing the very issue (race or national origin discrimination) for which the gesture should *not* be considered. Thus, absent further development of the record to address these concerns, testimony about the head bobble gesture (or any reenactment of it) is inadmissible at trial under Rule 403.

## IV. Conclusion

Much of the above analysis is based on the evidence established in connection with the briefing, rather than the evidence that will be developed at trial. This ruling is provisional and may be revisited depending on the evidence developed at trial. *See Adams v. Mem'l Hermann*, 973 F.3d 343, 351 n.6 (5th Cir. 2020) ("Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum ....") (quoting *Old Chief v. United States*, 519 U.S. 172, 187 (1997)).

Accordingly,

**IT IS ORDERED** that the Motion (R. Doc. 83) is **DENIED IN PART.** Kandan may present evidence of Irvin's alleged critical statements about Kandan at trial.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED IN PART.** Kandan may not present witness testimony that characterizes Irvin as having

discriminated against Kandan based on race or national origin nor evidence of an alleged head bobble gesture used by Irvin.

New Orleans, Louisiana, this 24th day of November, 2025.

EVA J. DOSSIER<br>
UNITED STATES MAGISTRATE JUDGE